JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Chasidy Plunkard
207 N. Maple Avenue
Brunswick, MD  21716

**(b)** County of Residence of First Listed Plaintiff   Frederick
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Shanin Specter, Esquire/Kila B. Baldwin, Esquire/Mark S. Polin, Esq.,
Kline & Specter, P.C., 1525 Locust Street, Phila., PA 19102
(215) 772 1000

## DEFENDANTS
CHARLES H. MARKS, D.O., DUANE E. SIPES, M.D., CAYLA RABER, CRNP, WELLSPAN OB/GYN AND GREENCASTLE FAMILY PRACTICE

County of Residence of First Listed Defendant   Adams
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question *(U.S. Government Not a Party)*

☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☒ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. 1332
Brief description of cause:
Personal Injury-Medical Malpractice action involving parties who are citizens of different states

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  8/1/18
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHASIDY PLUNKARD**<br>207 N. Maple Avenue<br>Brunswick, MD 21716<br><div align=right>**Plaintiff**</div><br>v.<br><br>**CHARLES H. MARKS, D.O.**<br>450 S. Washington Street, Suite B<br>Gettysburg, PA  17325<br><br>**DUANE E. SIPES, M.D.**<br>c/o Greencastle Family Practice<br>50 Eastern Avenue #135<br>Greencastle, PA  17225<br><br>**CAYLA RABER, CRNP**<br>c/o Greencastle Family Practice<br>50 Eastern Avenue #135<br>Greencastle, PA  17225<br><br>**WELLSPAN OB/GYN**<br>450 S. Washington Street, Suite B<br>Gettysburg, PA  17325<br><br>**GREENCASTLE FAMILY PRACTICE**<br>50 Eastern Avenue #135<br>Greencastle, PA  17225<br><div align=right>**Defendants**</div> | **CIVIL ACTION**<br>**NO.**<br><br><br><br>**JURY TRIAL DEMANDED**<br><br>**MEDICAL PROFESSIONAL**<br>**LIABILITY ACTION**<br><br>**CIVIL ACTION COMPLAINT** |

## CIVIL ACTION COMPLAINT

1.      Federal jurisdiction in this action is predicated upon diversity of citizenship under

statutory authority of 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000.00.

2.      Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §

1391(b) because (1) some or all defendants are residents of this judicial district and/or (2) the acts

and omissions that form the subject matter of this action occurred in this judicial district.

3.     The medical care that forms the basis of this Complaint took place in Adams and Franklin Counties, Pennsylvania.  Accordingly, pursuant to LR 83.6.1, this matter should be assigned to the Harrisburg vicinage of this Honorable Court.

4.     For purposes of diversity under 28 U.S.C. § 1332, Defendants are all citizens of the Commonwealth of Pennsylvania and Plaintiff is a citizen of the State of Maryland.

5.     Plaintiff, Chasidy Plunkard [formerly known as "Chasidy Whetzel"], is an adult citizen and resident of the State of Maryland, residing at 207 North Maple Avenue, Brunswick, Maryland 21716.

6.     Defendant, Charles H. Marks, D.O. ["Dr. Marks"], at all times relevant hereto, was a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, practicing within the field of Obstetrics and Gynecology.  Dr. Marks maintained a medical practice, office, and place of business at, among other sites, 450 South Washington Street, Suite B, Gettysburg, Pennsylvania 17325.  Plaintiffs are asserting a professional liability claim against this defendant. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding the medical care, treatment, and practice of this defendant is attached hereto as Exhibit "A."

7.     Defendant, Duane E. Sipes, M.D. ["Dr. Sipes"], at all times relevant hereto, was a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, practicing within the field of Family Medicine.  Dr. Sipes maintained a medical practice, office, and place of business at, among other sites, Greencastle Family Practice, 50 Eastern Avenue #135, Greencastle, Pennsylvania 17225.  Plaintiffs are asserting a professional liability claim against this defendant. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding the medical care, treatment, and practice of this defendant is attached hereto as Exhibit "B."

8.      Defendant, Cayla Raber, CRNP ["Ms. Raber"], at all times relevant hereto, was a Certified Registered Nurse Practitioner duly licensed to practice medicine in the Commonwealth of Pennsylvania. Ms. Raber maintained a medical practice, office, and place of business at, among other sites, Greencastle Family Practice, 50 Eastern Avenue #135, Greencastle, Pennsylvania 17225. Plaintiffs are asserting a professional liability claim against this defendant. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding the medical care, treatment, and practice of this defendant is attached hereto as Exhibit "C."

9.      Defendant, WellSpan OB/GYN, at all times relevant hereto, was a corporation, Professional Corporation, partnership, association, business, or other jural entity organized and operating under the laws of the Commonwealth of Pennsylvania, with a business address and an address at which it was regularly conducting business at 450 South Washington Street, Suite B, Gettysburg, Pennsylvania 17325. Plaintiffs are asserting a professional liability claim against this defendant for the negligence of its agents, servants and/or employees as stated more fully herein. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "D."

10.      Defendant, Greencastle Family Practice, at all times relevant hereto, was a corporation, Professional Corporation, partnership, association, business, or other jural entity organized and operating under the laws of the Commonwealth of Pennsylvania, with a business address and an address at which it was regularly conducting business at 50 Eastern Avenue #135, Greencastle, Pennsylvania 17225. Plaintiffs are asserting a professional liability claim against this defendant for the negligence of its agents, servants and/or employees as stated more fully herein. A Certificate of Merit pursuant to and in compliance with Pa.R.C.P. No. 1042.1 regarding this defendant is attached hereto as Exhibit "E."

11.     At all times relevant hereto, Dr. Marks was the actual, apparent or ostensible agent, servant, or employee of WellSpan OB/GYN and was acting within the scope of his professional duties for WellSpan OB/GYN while providing medical care and treatment to Chasidy Plunkard.

12.     At all times relevant hereto, Dr. Sipes was the actual, apparent or ostensible agent, servant, or employee of Greencastle Family Practice and was acting within the scope of his professional duties for Greencastle Family Practice while providing medical care and treatment to Chasidy Plunkard.

13.     At all times relevant hereto, Ms. Raber was the actual, apparent or ostensible agent, servant, or employee of Greencastle Family Practice and was acting within the scope of her professional duties for Greencastle Family Practice while providing medical care and treatment to Chasidy Plunkard.

14.     At all times relevant hereto, John Strickler, PA-C and Michael Fitzpatrick, D.O. were the actual, apparent or ostensible agents, servants, or employees of Greencastle Family Practice and were acting within the scope of their professional duties for Greencastle Family Practice while providing medical care and treatment to Chasidy Plunkard.

15.     The damages demanded in this case exceed the prevailing local arbitration limit, exclusive of costs and prejudgment interest.

## OPERATIVE FACTS

16.     Plaintiff, Chasidy Plunkard, was born on May 15, 1975.

17.     On December 30, 2015, at age 40, Chasidy Plunkard was seen by Ms. Raber and/or Dr. Sipes at Greencastle Family Practice for complaints of pelvic pain and irregular bleeding.

18.     On December 30, 2015, Ms. Raber and/or Dr. Sipes ordered a transvaginal ultrasound for Chasidy Plunkard's pelvic pain and irregular bleeding.

19.　On January 4, 2016, Chasidy Plunkard underwent a transvaginal ultrasound at CDI for a clinical indication of bloating and pain in the pelvis and irregular bleeding.

20.　On January 4, 2016, Chasidy Plunkard's transvaginal ultrasound at CDI revealed a thickened endometrial lining of 1.53 cm, normal left ovary, and enlarged, abnormal right ovary containing a complicated 3.68 x 2.69 x 3.80 cm cyst with echoes and septum and a separate 1.43 x 1.34 x 1.02 cm hyperechoic lesion.

21.　On January 4, 2016, Philip Moldovsky, M.D., a CDI radiologist, noted an MRI of the pelvis may be useful to further evaluate the enlarged right ovary and complicated cyst.

22.　On January 4, 2016, per Ms. Raber's instruction, staff at Greencastle Family Practice notified Chasidy Plunkard of the right ovarian cyst and thickened endometrial lining for which Ms. Raber wanted Chasidy Plunkard seen by a gynecologist.

23.　On January 4, 2016, the staff at Greencastle Family Practice made an appointment for Chasidy Plunkard to be seen by Dr. Marks at WellSpan OB/GYN on January 18, 2016.

24.　On January 12, 2016, Chasidy Plunkard called Greencastle Family Practice to complain of pelvic cramping, pain and heavy bleeding.

25.　On January 18, 2016, Chasidy Plunkard was seen and evaluated by Dr. Marks at WellSpan OB/GYN with complaints that included bloating, pelvic pain, irregular periods, and an abnormal pelvic ultrasound on January 4, 2016.

26.　On January 18, 2016, Dr. Marks performed an endometrial biopsy on Chasidy Plunkard and advised her that if the endometrial biopsy result was benign, and absent abnormal bleeding that impaired her lifestyle, nothing more need be done.

27.　On January 18, 2016, Dr. Marks indicated no concern with or need for Chasidy Plunkard to follow up on the previously identified complicated right ovarian cyst.

28.     On January 20, 2016, Chasidy Plunkard's endometrial biopsy was interpreted as benign, proliferative endometrium.

29.     On September 13, 2016, Chasidy Plunkard presented to Greencastle Family Practice complaining of diffuse pain for which she was evaluated by John Strickler, PA-C under the supervision/direction of Dr. Sipes and/or Michael Fitzpatrick, D.O., during which Chasidy Plunkard's history of a complicated right ovarian cyst on January 4, 2016 ultrasound was not noted or followed up upon.

30.     On September 14, 2016, Ms. Raber noted that Chasidy Plunkard had submitted an updated history on the portal and took no action relative to Chasidy Plunkard's history of a complicated right ovarian cyst on the January 4, 2016 ultrasound.

31.     On February 22, 2017, Chasidy Plunkard presented to the Frederick Memorial Hospital Emergency Department for severe right upper quadrant abdominal pain, at which time an ultrasound revealed possible cholelithiasis (gallstones) and pleural effusion.

32.     On March 28, 2017, Kevin Hurtt, M.D. ["Dr. Hurtt"], a general surgeon, performed a laparoscopic cholecystectomy on Chasidy Plunkard for probable gallstones, during which Dr. Hurtt found an inflamed appearing pelvis and omental lymph node that he excised.

33.     On April 5, 2017, Dr. Hurtt advised Chasidy Plunkard that the lymph node he excised on March 28, 2017 represented metastatic cancer of probable gynecologic origin.

34.     On April 10, 2017, Chasidy Plunkard was seen and evaluated by Neil B. Rosenshein, M.D. ["Dr. Rosenshein"], a gynecologic oncologist.

35.     On April 18, 2017, Dr. Rosenshein performed an exploratory laparotomy on Chasidy Plunkard that resulted in his performing a radical abdominal hysterectomy, bilateral

salpingo-oophorectomy, cytoreductive debulking, splenectomy, appendectomy, resection of the rectosigmoid with end-to-end anastomosis, and removal of other cancerous implants.

36.     On April 20, 2017, Chasidy Plunkard's final pathology revealed stage IVB low grade metastatic serous carcinoma of the ovaries.

37.     On May 30, 2017, Chasidy Plunkard was seen and evaluated by Michael McCormack, M.D. ["Dr. McCormack"], a medical oncologist, for evaluation and treatment of her "generally incurable" ovarian cancer.

38.     From June 6, 2017 to October 6, 2017, Chasidy Plunkard was treated with six courses of Carboplatinum/Taxol chemotherapy.

39.     Subsequent to Chasidy Plunkard's chemotherapy treatment, she has been followed by Dr. Rosenshein and Dr. McCormack for signs and symptoms of residual ovarian cancer.

40.     As a direct and proximate cause of Defendants' negligence, Chasidy Plunkard sustained the following injuries:

     a.  Stage IVB, metastatic ovarian cancer;

     b.  Increased risk of developing metastatic ovarian cancer;

     c.  Advanced stage ovarian cancer;

     d.  The loss of readily available surgical treatment options and cure for stage I ovarian cancer;

     e.  Delay in treatment of ovarian cancer;

     f.  Loss of opportunity for cure;

     g.  Increased risk of recurrent cancer;

     h.  Reduced probability of long-term survival;

     i.  Reduced life expectancy;

j.  Chemotherapy and the attendant side effects to such treatment;

k.  Need for additional surgery, including cytoreductive debulking;

l.  Splenectomy;

m.  Increased risk of infection and complications from splenectomy;

n.  Rectosigmoid bowel resection;

o.  All invasive procedures identified in the medical record;

p.  Depression;

q.  Anxiety;

r.  Disfigurement;

s.  Past and future medical expenses;

t.  Past and future physical pain and suffering;

u.  Past and future mental anguish;

v.  Past and future embarrassment;

w.  Past and future humiliation;

x.  Past and future loss of life's pleasures;

y.  Past and future loss of earnings;

z.  Economic and financial damages; and,

aa. All injuries and damages set forth in Chasidy Plunkard's medical
    records.

41.   The conduct of all Defendants was a substantial factor in causing the injuries and
damages set forth above.

42.   The conduct of all Defendants increased the risk of harm to Chasidy Plunkard and
increased the risk that she would suffer the injuries and damages set forth above.

43.     The injuries to Chasidy Plunkard, as described herein, were caused solely and wholly by reason of Defendants' negligence and were not caused or contributed thereto by any action or inaction of Plaintiff.

44.     As a direct and proximate cause of the negligent care and treatment provided by all Defendants, Plaintiff, Chasidy Plunkard, claims the full measure of damages allowable under the law.

## COUNT I – NEGLIGENCE
## PLAINTIFF v. CHARLES H. MARKS, D.O. AND
## WELLSPAN OB/GYN

45.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

46.     The negligent acts and omissions of Dr. Marks, and derivatively of WellSpan OB/GYN, consisted of one or more of the following:

a)     Failure to appropriately evaluate the complicated right ovarian cyst and related findings on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

b)     Failure to take a complete and adequate history on Chasidy Plunkard on January 18, 2016;

c)     Failure to appropriately evaluate Chasidy Plunkard gynecologic history and clinical presentation;

d)     Inappropriately relying on Dr. Sipes and/or Ms. Raber's recommendations regarding Chasidy Plunkard's care and treatment;

e)     Failure to perform a repeat pelvic ultrasound prior to performing an endometrial biopsy given Chasidy Plunkard's complaints of acute pelvic pain and heavy vaginal bleeding on or about January 12, 2016;

f)      Failure to perform a repeat pelvic ultrasound on January 18, 2016 given the complicated right ovarian cyst and related findings on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

g)      Failure to order MRI of the pelvis given the findings and recommendations made by the radiologist on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound report;

h)      Failure to discuss the option of an MRI with Chasidy Plunkard given the findings and recommendations made by the radiologist on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound report;

i)      Failure to consider and appropriately evaluate the right ovarian findings on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

j)      Failure to appreciate or consider that Chasidy Plunkard's complaints of pelvic pain and bloating with a complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound were suggestive of possible ovarian cancer;

k)      Failure to have a timely, repeat pelvic ultrasound performed to evaluate the complicated right ovarian cyst and related findings found on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

l)      Failure to timely perform repeat ultrasounds or other studies on Chasidy Plunkard's right ovary to establish the complicated right ovarian cyst and related findings resolved and/or represented a benign condition;

m)      Failure to rule out ovarian cancer given Chasidy Plunkard's January 4, 2016 transvaginal ultrasound findings;

n)      Failure to rule out ovarian cancer given Chasidy Plunkard's January 4, 2016 transvaginal ultrasound findings and complaints that included pelvic pain and bloating;

o)      Failure to advise Chasidy Plunkard that the complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound could be indicative of ovarian cancer;

p)      Failure to advise Chasidy Plunkard that the complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound needed to be followed up upon;

q)      Failure to advise Ms. Raber, Dr. Sipes and/or Greencastle Family Practice that the complicated right ovarian cyst and related findings on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound could be indicative of ovarian cancer;

r)      Failure to advise Ms. Raber, Dr. Sipes and/or Greencastle Family Practice that the complicated right ovarian cyst and related findings on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound needed to be followed up upon;

s)      Failure to appropriately evaluate Chasidy Plunkard on January 18, 2016 for possible ovarian cancer;

t)      Failure to timely follow up with Chasidy Plunkard given the complicated right ovarian cyst and related findings found on her January 4, 2016 transvaginal ultrasound;

u)      Incorrectly advising Chasidy Plunkard that her pelvic ultrasound on January 4, 2016 was not of concern;

v)      Incorrectly advising Chasidy Plunkard that if her endometrial biopsy was benign, absent significant abnormal bleeding, there was no need for follow up.

47.    The negligence of Dr. Marks, as set forth herein, was a substantial contributing factor causing the injuries and damages suffered by Chasidy Plunkard.

48.    As a direct and proximate result of the negligence and carelessness of Dr. Marks, and derivatively of WellSpan OB/GYN, Chasidy Plunkard suffered catastrophic injuries and damages as set forth above.

**WHEREFORE**, Plaintiff, Chasidy Plunkard, demands compensatory damages against all defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of delay damages and costs.

### COUNT II – NEGLIGENCE
### PLAINTIFF v. DUANE E. SIPES AND
### GREENCASTLE FAMILY PRACTICE

49.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

50.    The negligent acts and omissions of Dr. Sipes, and derivatively of Greencastle Family Practice, consisted of one or more of the following:

a)      Failure to appropriately evaluate the complicated right ovarian cyst and related findings on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

b)      Failure to order MRI of the pelvis given the findings and recommendations made by the radiologist on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound report;

c)      Failure to discuss the option of an MRI with Chasidy Plunkard given the findings and recommendations made by the radiologist on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound report;

d) Failure to address and evaluate the right ovarian findings on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

e) Failure to appreciate or consider that Chasidy Plunkard's complaints of pelvic pain and bloating with a complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound were suggestive of possible ovarian cancer;

f) Failure to have a timely, repeat pelvic ultrasound performed to evaluate the complicated right ovarian cyst and related findings found on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

g) Failure to timely perform repeat ultrasounds or other studies on Chasidy Plunkard's right ovary to establish the complicated right ovarian cyst and related findings resolved and/or represented a benign condition;

h) Failure to rule out ovarian cancer given Chasidy Plunkard's January 4, 2016 transvaginal ultrasound findings;

i) Failure to rule out ovarian cancer given Chasidy Plunkard's January 4, 2016 transvaginal ultrasound findings and complaints that included pelvic pain and bloating;

j) Failure to advise Chasidy Plunkard that the complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound could be indicative of ovarian cancer;

k) Failure to advise Chasidy Plunkard that the complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound needed to be followed up upon;

l)      Failure to timely follow up with Chasidy Plunkard given the complicated right ovarian cyst and related findings found on her January 4, 2016 transvaginal ultrasound;

m)      Failure to provide appropriate supervision and oversight of Ms. Raber's care and treatment of Chasidy Plunkard;

n)      Inappropriately relying on Dr. Marks' recommendations regarding Chasidy Plunkard's care and treatment;

o)      Failure to recognize or consider the need for follow up of Chasidy Plunkard's complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound when seen and evaluated on September 13, 2016 complaining of pain.

51.    The negligence of Dr. Sipes, as set forth herein, was a substantial contributing factor causing the injuries and damages suffered by Chasidy Plunkard.

52.    As a direct and proximate result of the negligence and carelessness of Dr. Sipes, and derivatively of Greencastle Family Practice, Chasidy Plunkard suffered catastrophic injuries and damages as set forth above.

**WHEREFORE**, Plaintiff, Chasidy Plunkard, demands compensatory damages against all defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of delay damages and costs.

## COUNT III – NEGLIGENCE
### PLAINTIFF v. CAYLA RABER, CRNP AND
### <u>GREENCASTLE FAMILY PRACTICE</u>

53.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

54.     The negligent acts and omissions of Ms Raber, and derivatively of Greencastle Family Practice, consisted of one or more of the following:

a)     Failure to appropriately evaluate the complicated right ovarian cyst and related findings on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

b)     Failure to order MRI of the pelvis given the findings and recommendations made by the radiologist on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound report;

c)     Failure to discuss the option of an MRI with Chasidy Plunkard given the findings and recommendations made by the radiologist on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound report;

d)     Failure to address and evaluate the right ovarian findings on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

e)     Failure to appreciate or consider that Chasidy Plunkard's complaints of pelvic pain and bloating with a complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound were suggestive of possible ovarian cancer;

f)     Failure to have a timely, repeat pelvic ultrasound performed to evaluate the complicated right ovarian cyst and related findings found on Chasidy Plunkard's January 4, 2016 transvaginal ultrasound;

g)     Failure to timely perform repeat ultrasounds or other studies on Chasidy Plunkard's right ovary to establish the complicated right ovarian cyst and related findings resolved and/or represented a benign condition;

h)     Failure to rule out ovarian cancer given Chasidy Plunkard's January 4, 2016 transvaginal ultrasound findings;

i)     Failure to rule out ovarian cancer given Chasidy Plunkard's January 4, 2016 transvaginal ultrasound findings and complaints that included pelvic pain and bloating;

j)     Failure to advise Chasidy Plunkard that the complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound could be indicative of ovarian cancer;

k)     Failure to advise Chasidy Plunkard that the complicated right ovarian cyst and related findings on her January 4, 2016 transvaginal ultrasound needed to be followed up upon;

l)     Failure to timely follow up with Chasidy Plunkard given the complicated right ovarian cyst and related findings found on her January 4, 2016 transvaginal ultrasound;

m)     Failure to adequately communicate with Dr. Sipes or other physician at Greencastle Family Practice regarding her care and treatment of Chasidy Plunkard;

n)     Inappropriately relying on Dr. Marks' recommendations regarding Chasidy Plunkard's care and treatment;

o)     Failure to recognize or consider the need for follow up of Chasidy Plunkard's complicated right ovarian cyst and related findings on her January 4, 2016

transvaginal ultrasound when reviewing Chasidy Plunkard's medical record on or about September 14, 2016.

55.     The negligence of Ms. Raber, as set forth herein, was a substantial contributing factor causing the injuries and damages suffered by Chasidy Plunkard.

56.     As a direct and proximate result of the negligence and carelessness of Ms. Raber, and derivatively of Greencastle Family Practice, Chasidy Plunkard suffered catastrophic injuries and damages as set forth above.

**WHEREFORE**, Plaintiff, Chasidy Plunkard, demands compensatory damages against all defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of delay damages and costs.

## COUNT IV – CORPORATE NEGLIGENCE
## PLAINTIFF V. WELLSPAN OB/GYN

57.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

58.     The corporate negligence of WellSpan OB/GYN arises out of the medical evaluation, care, and treatment rendered to Chasidy Plunkard under the doctrinal tenets set forth in the Supreme Court of Pennsylvania in Thompson v. Nason, 527 Pa. 330, 591 A.2d 703 (1991) and its progeny of case law.  WellSpan OB/GYN owed a nondelegable duty directly to Chasidy Plunkard pursuant to Thompson and its progeny of case law, which consisted of:

   a)     A duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;

   b)     A duty to select and retain only competent physicians;

   c)     A duty to oversee all persons who practice medicine within its walls as to patient care; and

d)     A duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the patients.

59.    The corporate negligence of WellSpan OB/GYN arising out of the medical evaluation, care, and treatment rendered Chasidy Plunkard, under the doctrinal tenets set forth in Thompson and its progeny of case law, included the following:

a)     Failure to use reasonable care in the maintenance of safe and adequate facilities;

b)     Failure to select and retain physicians competent in the diagnosis, management, and treatment of ovarian cancer;

c)     Failure to select and retain physicians competent in recognizing patients at risk for ovarian cancer;

d)     Failure to select and retain physicians competent to take a complete and adequate history on Chasidy Plunkard;

e)     Failure to oversee all persons who practice medicine within the four walls of the medical facility to ensure the appropriate diagnosis and management of patients, like Chasidy Plunkard., who were at risk for ovarian cancer;

f)     Failure to oversee all persons who practice medicine within the four walls of the medical facility to ensure the appropriate diagnosis and management of patients, like Chasidy Plunkard who present with complaints of acute pelvic pain and heavy vaginal bleeding and have complicated ovarian cyst visible on ultrasound; and,

18

g)    A duty to formulate, adopt and enforce adequate rules and policies with respect to the evaluation of a patient who present with symptoms of ovarian cancer.

**WHEREFORE**, Plaintiff, Chasidy Plunkard, demands compensatory damages against all defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of delay damages and costs.

## COUNT V – CORPORATE NEGLIGENCE
## PLAINTIFF V. GREENCASTLE FAMILY PRACTICE

60.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

61.    The corporate negligence of Greencastle Family Practice arises out of the medical evaluation, care, and treatment rendered to Chasidy Plunkard under the doctrinal tenets set forth in the Supreme Court of Pennsylvania in Thompson v. Nason, 527 Pa. 330, 591 A.2d 703 (1991) and its progeny of case law.  Greencastle Family Practice owed a nondelegable duty directly to Chasidy Plunkard pursuant to Thompson and its progeny of case law, which consisted of:

a)    A duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;

b)    A duty to select and retain only competent physicians;

c)    A duty to oversee all persons who practice medicine within its walls as to patient care; and

d)    A duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the patients.

62.     The corporate negligence of Greencastle Family Practice arising out of the medical

evaluation, care, and treatment rendered Chasidy Plunkard, under the doctrinal tenets set forth in

Thompson and its progeny of case law, included the following:

a)      Failure to use reasonable care in the maintenance of safe and adequate

        facilities;

b)      Failure to select and retain physicians competent in the diagnosis,

        management, and treatment of ovarian cancer;

c)      Failure to select and retain physicians competent in recognizing patients at

        risk for ovarian cancer;

d)      Failure to select and retain physicians competent to take a complete and

        adequate history on Chasidy Plunkard;

e)      Failure to oversee all persons who practice medicine within the four walls

        of the medical facility to ensure the appropriate diagnosis and management

        of patients, like Chasidy Plunkard., who were at risk for ovarian cancer;

f)      Failure to oversee all persons who practice medicine within the four walls

        of the medical facility to ensure the appropriate diagnosis and management

        of patients, like Chasidy Plunkard who present with complaints of acute

        pelvic pain and heavy vaginal bleeding and have complicated ovarian cyst

        visible on ultrasound; and,

g)      A duty to formulate, adopt and enforce adequate rules and policies with

        respect to the evaluation of a patient who present with symptoms of ovarian

        cancer.

**WHEREFORE**, Plaintiff, Chasidy Plunkard, demands compensatory damages against all defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of delay damages and costs.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____

SHANIN SPECTER, ESQUIRE
KILA B. BALDWIN, ESQUIRE
MARK S. POLIN, ESQUIRE
1525 Locust Street
The Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
(215) 772-1359 (fax)
Attorneys for Plaintiffs

Date: 8/1/18

## **VERIFICATION**

I, Chasidy Plunkard, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and is not mine. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsifications to authorities.

CHASIDY PLUNKARD

Date: July 3, 2018